UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEFFREY TULLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-00168-TWP-TAB |
| | ) |
| WENDY KNIGHT, | ) |
| FOX, Major, | ) |
| COATES, Lt., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO EIGHTH AMENDMENT CLAIMS AND DECLINING TO EXERCISE
SUPPLEMENTAL JURISDICTION OVER STATE TORT CLAIMS**

This matter is before the Court on a Motion for Summary Judgment, (Dkt. 29), filed by the Defendants Wendy Knight, Major Fox, and Lieutenant Coates (collectively "the Defendants"). Plaintiff Jeffrey Tullis ("Tullis") initiated this action alleging violation of his Eighth Amendment rights and Indiana tort law when Tullis was subjected to conditions of confinement that resulted in him contracting COVID-19. For the reasons explained below, the Defendants' Motion is **granted** as to Tullis' Eighth Amendment claims, while the Court declines to exercise supplemental jurisdiction over Tullis' state tort claims.

### I.     FACTUAL BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

On March 11, 2020, the World Health Organization declared the novel coronavirus ("COVID-19") outbreak a global pandemic.[1] The events at issue in Tullis' Complaint all took place in November 2020. At all times relevant to the Complaint, a public health emergency declaration for the COVID-19 outbreak was in effect in the state of Indiana. *See* Dkt. 29-2.

Tullis was an Indiana Department of Correction ("IDOC") prisoner in custody at the Correctional Industrial Facility. (Dkt. 1 at 3.)[2] Defendants were all IDOC employees at the same prison. *Id.* at 3−4. On November 10, 2020, two Aramark food service employees working at the prison tested positive for COVID-19. *Id.* at 4−5. On November 13, 2020, three inmates who had been in contact with the Aramark employees developed COVID-19 symptoms. *Id.* at 5. The three inmates, all residents of Tullis's housing unit, were placed in quarantine the following day. *Id.*

On November 18, 2020, Defendants directed that Tullis' housing unit be sanitized to prevent spread of COVID-19. *Id.* Tullis and the other 126 inmates from his housing unit were moved to a dining room for six hours while the cleaning was conducted. *Id.* at 6; Dkt. 29-1 at 23-24. There was not enough room in the dining hall for 126 inmates to maintain six feet of distance between each other. (Dkt. 29-1 at 26.) While the inmates were in the dining room, one of them became sick and was taken to the medical department. *Id.* After the cleaning, Tullis and the other prisoners were returned to their housing unit. (Dkt. 1 at 7.) The next day, November 19, 2020, Tullis displayed COVID-19 symptoms.[3] *Id.*

---

[1] See Centers for Disease Control and Prevention, "CDC Museum COVID-19 Timeline," https://www.cdc.gov/museum/timeline/covid19.html (last visited Feb. 7, 2022).

[2] The Defendants cite allegations in Tullis' unverified complaint to support their statement of material facts not in dispute. For summary judgment purposes, the Court treats these cited allegations as true.

[3] Tullis had also experienced COVID-19 symptoms in the weeks before November 18, 2020, but he believes that a new infection caused his second round of symptoms. (Dkt. 29-1 at 32−33.)

In addition to the November 18, 2020 sanitization of Tullis' housing unit, administrators at the Correctional Industrial Facility put the additional measures in place to prevent the spread of COVID-19:

- Staff and inmates received temperature checks to screen for fever. (Dkt. 29-1 at 19, 36−37.)

- Staff were required to wear masks. *Id.* at 14.

- Inmates were provided masks. *Id.* at 12.

- Inmates were not allowed to congregate in the day room of the housing unit. *Id.* at 23.

- Handwashing stations were installed throughout the housing units to encourage hand washing. *Id.* at 12.

- In-person visits were suspended. *Id.* at 12−13.

- Inmates were quarantined if they reported symptoms or if another inmate reported them. *Id.* at 14−15.

Tullis reports that inmates in his housing unit did not regularly wear masks or maintain social distance. *Id.* at 23 ("[P]eople would still come out and be kicking it, but it wouldn't be in big groups, and not in the day room. They would be in amongst the range or bathroom. It didn't stop anything. People still didn't social distance."); *id.* at 15 (testifying that inmates did not wear masks, even though masks had been provided).

## II. STANDARD OF REVIEW

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Federal Rule of Civil Procedure 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm.*

*Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021).  A "genuine dispute" exists when a reasonable factfinder could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Material facts" are those that might affect the outcome of the suit.  *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the non-moving party.  *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant.  *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

### III.   DISCUSSION

Tullis is proceeding on Eighth Amendment conditions-of-confinement and state law negligence claims.  The Court will first address the Eighth Amendment claim before turning to the state law claim.

**A.   Eighth Amendment Claims**

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021); *see Farmer v. Brennan*, 511 U.S. 825, 832

4

(1994)).  A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019).  Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up).  Under the subjective component, a prisoner must establish that the Defendants "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720.  Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted).  Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

A jury could find that placing Tullis in close quarters in a dining room with a group of inmates where they could not socially distance posed a substantial risk of harm to his health, satisfying the objective prong of the deliberate indifference analysis.  *See Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (finding that the transmissibility of COVID-19 combined with a prison's dormitory-style housing presented a substantial risk that prisoners "will be infected with COVID-19 and have serious health effects as a result[.]").

However, no reasonable jury could find based on the designated evidence that the Defendants were deliberately indifferent to Tullis' health risk. Tullis contends that the Defendants' actions violated guidelines established by the Centers for Disease Control and Prevention ("CDC") regarding social distancing. (Dkt. 35 at 4.)  But these guidelines, while they may inform the deliberate indifference analysis, "do not themselves set a constitutional standard." *Mays v. Dart*, 974 F.3d 810, 823−24 (7th Cir. 2020).

"Also, courts have consistently afforded prison officials more leeway with respect to social distancing efforts due to security needs and the physical constraints of the facilities." *Griffin v.*

5

*Knight*, 1:21-cv-38-TWP-TAB, 2023 WL 1363317, at *3 (S.D. Ind. Jan. 31, 2023); *see Mays*, 974 F.3d at 821 (vacating a portion of preliminary injunction which prohibited double-celling in the Cook County Jail during COVID-19 because courts must defer to prison officials for housing decisions); *Hope v. Warden York Co. Prison*, 972 F.3d 310, 330 (3rd Cir. 2020) (citing CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, which provided that social distancing "strategies will need to be tailored to the individual space in the facility and the needs of the residents and staff.").

Administrators and staff at the Correctional Industrial Facility took affirmative steps to protect inmates from contracting COVID-19, including providing masks to inmates, requiring masks for staff, restricting in-person visits, screening both inmates and staff for symptoms, limiting inmate congregation, installing handwashing stations, and quarantining inmates who tested positive for COVID-19. (Dkt. 29-1 at 12−15, 19, 23, 36−37.) No reasonable jury would find that the Defendants' actions, taken as a whole, show deliberate indifference to Tullis' risk of contracting COVID-19. *See Wilson*, 961 F.3d at 841 (holding that similar protective measures constituted a reasonable response to inmates' risk). Accordingly, Defendants are entitled to summary judgment on Tullis' Eighth Amendment claim.

Additionally, even if a reasonable jury could find an Eighth Amendment violation, the Defendants are entitled to summary judgment on qualified immunity grounds because Tullis has not shown a clearly established right to additional COVID-19 safeguards. *See White v. Pauly*. 137 S.Ct. 548, 551 (2017) ("Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (cleaned up)).

**B.**     **State Tort Claims**

Where, as here, "a district court has dismissed all federal claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction over" any remaining state law claims. 28 U.S.C. § 1367(c). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

"Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Sharp Electronics v. Metropolitan Life Ins.*, 578 F.3d 505, 514 (7th Cir. 2009) (cleaned up). Exceptions to the general rule exist "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (cleaned up).

The Court finds no reason to deviate from the usual practice in this case. The Court has not expended significant resources on the pending state law claims, the statute of limitations will not have run on those claims, and comity favors allowing state courts to decide issues of state law. For these reasons, the Court exercises its discretion to relinquish supplemental jurisdiction over Tullis' state law claims.

## IV. <u>CONCLUSION</u>

The Defendants' Motion for Summary Judgment, Dkt. [29], is **GRANTED** as to Tullis' Eighth Amendment claims. The Court declines to exercise supplemental jurisdiction over Tullis' remaining state tort claims. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 2/9/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jeffrey Tullis, 178142
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
New Castle, Indiana  47362

Adrienne Nicole Pope
OFFICE OF THE INDIANA ATTORNEY GENERAL
adrienne.pope@atg.in.gov

Erica Lee Sawyer
OFFICE OF THE INDIANA ATTORNEY GENERAL
erica.sawyer@atg.in.gov